Reed, P. J.,
delivered the opinion of the court.
A suit in equity to compel the conveyance of a one fourth interest in a number of lots, the title to one half being in defendant in error. It was alleged in the complaint that one Eaton, the plaintiff in error, and defendant Fowler purchased the lots; that the conveyance was made to Eaton and the plaintiff, each one half, but that the plaintiff held one fourth in trust for the defendant; that plaintiff and defendant were partners in business, and the purchase made with partnership funds or property; that the parties, being in need of money for the business of the partnership, in November, 1885, plaintiff borrowed from one Ampter $600, and gave a deed of trust upon the property to secure it, and that the money was used for partnership purposes. Default having been made in the payment of the Ampter debt, the property was sold under the trust deed on February 18, 1887, for $635, bought by the defendant for the joint use of both parties; that the defendant denied the trust, refused to convey, and claimed to own the property individually; that in 1876 plaintiff and defendant owned one half of the Carbon coal mine, and Eaton the other half, which was traded for the lots in controversy; that up to the time of the sale of the lots in 1887, plaintiff and defendant were as partners engaged in developing mines in Park county, the expenses to be equally borne by each ; that, at the time of the sale of the lots, defendant owed plaintiff over $630 for money advanced by the plaintiff in partnership affairs in excess of his portion ; that in 1889 defendant, upon several interviews, fully recognized the claim of the plaintiff, etc., asking that defendant be decreed to convey the interest claimed and for an accounting.
Defendant answered, denying every material allegation of the complaint; denied that he had interest in the coal mine *380 or the lots until he purchased at the sale; denied partnership in the coal mine; alleged that Eaton and plaintiff were the owners, and that he contributed nothing to the purchase of the lots; denied that plaintiff held one half in trust for him; denied that in 1885 he and plaintiff -were jointly-engaged in mining in Park county; denied that he and plaintiff needed money for partnership purposes; admitted that plaintiff made the loan from Ampter; denied that the money was obtained or used for their joint benefit, and that he ever received a dollar of it; plea of statute of limitations; that on the morning of sale plaintiff told him the lots were to be sold, advised him to purchase, as Ampter would get them if he did not; was no agreement to buy for the use of plaintiff or any one else.
lleplication denying affirmative allegations in answer. A trial was had to the court. After plaintiff’s evidence was in, defendant moved for a nonsuit, which was granted. The granting of the motion and refusal to grant a new trial are assigned as errors.
In order to succeed in this case, plaintiff was compelled upon the trial to establish the following propositions:
First. A partnership as early as 1876, in leasing and working the Carbon coal mine, in which defendant was a partner. Plaintiff’s testimony is to the effect that the lease was taken and mine worked in the name of Eaton & Hodgson, because Eaton would not have defendant’s name in it. It is clear that defendant was not a general partner, — was not a partner with Eaton. It is not shown that defendant ever participated in working or management, paid losses or received profits. The claim is that, by virtue of a written agreement made between the plaintiff and defendant, the latter was to be an equal partner with the plaintiff in his half of the Eaton & Hodgson lease. The agreement was not produced, and the testimony in regard to its provisions, witness never having seen it since, was, of necessity, after so many years, very vague and indefinite.
The evidence was insufficient to establish the partnership *381 alleged in the complaint; and, as to the lease, it stood in the names of Eaton & Hodgson, and a one half interest in it was exchanged for the property in controversy. The conveyance was made to Eaton & Hodgson; no conveyance to defendant by the grantors or plaintiff. No reason is given for not having conveyed. It also shows that for several years plaintiff assumed ownership, exercised control, and, to suit his own convenience or necessities, mortgaged it two or three times. True, he stated that the money so obtained was use'd for partnership purposes, but the evidence of a subsequent partnership in regard to working and development of mines is too indefinite and general to establish such relation except for prospecting. No property is named nor amount stated as expended. It rests generally upon the statement that he paid out for partnership purposes all that he obtained by mortgages. No decree of partnership can be based upon such evidence. The whole claim of right is based upon the fact of partnership. The right, if any, grew out of partnership transactions; and no rule of law is better established than that to assert a right of that kind the existence and character of the partnership must be established, and, after such dissolution and such a lapse of time, a statement and proof of the condition of accounts as between them must be established beyond question. Having failed to establish such a partnership as would stamp the realty in question with the character of partnership assets and charge defendant with a resulting trust, the case fails from necessity.
Second. In order to succeed, it was necessary to establish two trusts, — first, that of the plaintiff of a one fourth interest for the benefit of defendant. It rests entirely upon the evidence of plaintiff; while the manner of acquiring it, the continued holding for eight years, acts of ownership, payment of all taxes, and making mortgages, contradict the existence of a title in trust for another. Defendant, in the verified answer, denied ever having any interest in the property until his purchase at public sale. No business partnership is alleged or shown to have existed in 1887, when *382 defendant purchased the property. It was mortgaged by the plaintiff. He was unable to protect it. The property was to be sold. Defendant’s attention was called to it, and he became the purchaser; borrowed $300, by mortgaging other property to make up the purchase money; subsequentlypaid it. The whole purchase price was paid by the defendant, as shown by the evidence. To impress upon the property the legal character of a trust resulting from a partnership transaction, an existing partnership must have been proved; a purchase, also, by partnership funds. Neither was shown. The attempt was to show that, by reason of some former transaction as partners, defendant was indebted to the plaintiff in some undefined, indefinite amount, and that, by reason of such indebtedness, plaintiff was equitably entitled to one half. This was insufficient.
“Resulting trusts are trusts the courts presume to arise out of the transactions of the parties, as if one man pays the purchase money for an estate and the deed is taken in the name of another. Courts presume that a trust is intended for the person who pays the money.” 1 Perry on Trusts, sec. 26.
“ An agent for the purchase of property cannot be declared a trustee for his principal when he repudiates the agency, and purchases the property with his own funds.” First Nat. Bank v. Bissell et al., 4 Fed. Rep. 694; Burden v. Sheridan, 36 Iowa, 125; 1 Perry on Trusts, sec. 135.
“ If one agrees to purchase land and give another an interest in it, and he purchases and pays his own money and takes the title in his own name, no trust can result.” 1 Perry on Trusts, see. 134; Kisler v. Kisler, 2 Watts (Pa.), 323; Williard v. Williard, 56 Pa. St. 119; Thorner v. Thorner, 18 Ind. 162; Rogers v. Simmons, 55 Ill. 66; Duffy v. Masterson, 44 N. Y. 557.
Failing to prove a resulting trust from the relation of the parties, the use of partnership funds in the purchase of the property, or the money of the plaintiff, the plaintiff was compelled to rely upon oral admissions and declarations to estab *383 lish a trust. Those attempted to be proved were very vague and indefinite, but their character was unimportant, made long subsequent to the transaction. Such testimony was inadmissible. Unless the transaction was tainted with either actual or constructive fraud, a trust could not be created by parol. See our Statute of Frauds (Mills’ Stats., sec. 2019); Stewart v. Stevens, 10 Colo. 446; Von Trotha v. Bamberger, 15 Colo. 1; Kayser v. Maugham, 8 Colo. 239; Shaffner v. Shaffner, 145 Pa. St. 163; Acker v. Priest (Sup. Ct. of Iowa), 61 N. W. Rep. 235.
“A parol agreement made by one to buy another’s land at trustee’s sale, and hold it for him, creates no trust.” Kraft v. Smith, 117 Pa. St. 378; Salsburg v. Black, 119 Pa. St. 200 ; Minot v. Mitchell, 30 Ind. 228.
A verbal agreement to purchase land for the benefit of another is void under the statute of frauds, and cannot be enforced against the purchaser, who, in the absence of the fraud, has paid for the land with his own money and taken a conveyance in his own name. 1 Perry on Trusts, sec. 76; Von Trotha v. Bamberger, supra; Bohm v. Bohm, 9 Colo. 100; Stephenson v. Thompson, 13 Ill. 186 ; Perry v. McHenry, 13 Ill. 227 ; Bourke v. Calanan, 160 Mass. 195.
It follows that the district court committed no error in finding for the defendant, and the judgment will be affirmed.
Affirmed.